**ORCHARD GROUP, INCORPORATED, Plaintiff–Appellee, Cross–Appellant,**

v.

**KONICA MEDICAL CORP., Defendant– Appellant/Cross–Appellee.**

Nos. 96–3686, 96–3687.

United States Court of Appeals, Sixth Circuit

May 7, 1998.

Before KEITH and SUHRHEINRICH, Circuit Judges and ROSEN,* District Judge.

### ORDER

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges

* Hon. Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

of this court, and less than a majority of the judges having favored the suggestion, the petition for rehearing has been referred to the original panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the case. Accordingly, the petition is denied.

MERRITT, Circuit Judge, dissenting from the denial of rehearing.

Although it is unusual for this Court to rehear diversity cases en banc, I must dissent in this case because the panel's decision is contrary to basic U.C.C. law. In essence, the panel overturned a jury verdict because the requirements contract at issue did not specify a quantity term. This holding is flat wrong. The absence of a quantity term is the very essence of a requirements contract. The panel's opinion misses this basic point by misconstruing U.C.C. § 2–306's "reasonableness" limits on good faith as imposing a quantity term. This holding undermines the entire purpose of § 2–306, which is designed to uphold requirements contracts that necessarily do not specify a quantity of goods.

Besides, this is not a penny-ante case. The panel's opinion vacates a $1 million jury verdict because the letter at issue "is not exclusive and lacks any identifiable quantity term" and thus "is not exclusive and lacks any identifiable quantity term" and thus "is not a requirements contract as a matter of law." This flies in the face of U.C.C. § 2–306 and its recent revisions, which make it clear "Section 2–306(a) . . . does not require that there must be an exclusive dealing arrangement before an output or requirements term is enforceable" and which distinguish situations where "there are no actual output or requirements in good faith" from those where "there are some." Discussion Draft of Revised Article 2, § 2–304 (old § 2–306), Note 1 (April 14, 1997). When, as here, the agreement involves a new business that naturally has no "actual output or requirements," the proper question to ask is "whether the lack of output or requirements occurred in good faith, not whether the lack of actual output or requirements was 'unreasonably disproportionate.' " *Id.* The revised provision makes it abundantly clear that "good faith" is the ground rule, and that the question of "stated estimate[s]" and "previous output or requirements" only comes in once they actually "occur." *Id.* § 2–304 (old § 2–306).

Even a new business can establish an ongoing business relationship for unspecified requirements, provided those requirements are not unreasonable when they are eventually ordered. That is exactly what the parties did here: Konica agreed to help the Orchard Group establish its medical supply company by promising to supply the Orchard Group with film at a specified rebate depending upon the size of the order. The relationship, and the Orchard Group's business, ended before it ever started when Konica repudiated the contract. This breach was in bad faith and should result in liability. As written, the opinion excuses such bad faith breaches that occur before a start-up business has a chance to place an order, rather than encouraging the development of such relationships. I respectfully dissent from our decision not to correct this erroneous precedent.